The Honorable Julie Benafield Bowman Insurance Commissioner Arkansas Insurance Department 1200 West Third Street Little Rock, Arkansas 72201-1904
Dear Commissioner Bowman:
I am writing in response to your request for an opinion on an issue concerning the Arkansas Freedom of Information Act ("FOIA"), A.C.A. §§ 25-19-101 — 109 (Repl. 2002 and Supp. 2007). As background for your question, you note that the State of Arkansas is required to provide the "Arkansas Workers' Compensation Plan" ("the Plan") pursuant to A.C.A. § 23-67-301 et seq. (Repl. 2001 and Supp. 2007).[1] You further report in this regard:
Pursuant to Ark. Code Ann. § 23-67-304(e), I have delegated the operation of the Plan to the National Council on Compensation Insurance ("NCCI"). In its capacity as the administrator of the Plan the NCCI has, with my approval, adopted a Voluntary Coverage Assistance Program ("VCAP"). The VCAP program is a free, internet-based service which assists insurance agents/brokers and employers applying for coverage through the voluntary market. VCAP attempts to achieve this objective by notifying workers' compensation insurers participating in VCAP when a Plan insured/employer matches its general pre-selected underwriting criteria for coverage. The servicing agent/broker for the employer/insured is subsequently notified that a participating workers' compensation insurer is interested in providing voluntary coverage, whereupon a "reasonable offer of voluntary coverage" is determined. Depopulating the Plan is the ultimate goal of the VCAP program, and it also benefits employers because rates are generally more competitive in the voluntary market.
Your specific question in this regard pertains to the FOIA's so-called "competitive advantage" exemption under A.C.A. § 25-19-105(b)(9)(A), and is prompted by an opinion issued by one of my predecessors. Attorney General Opinion 94-015 addressed the question of whether the names, addresses, and expiration dates of all the insureds in the Plan could be released in response to an FOIA request in light of the "competitive advantage" exemption. As you point out, it was concluded that the exemption "in all likelihood applies . . . to prevent disclosure of the requested documents." Id. at 1.
You have requested my opinion as to the possible application of this opinion to the VCAP program. You have expressed your belief as custodian of Plan records that "the VCAP program and its purpose to depopulate the residual market by redirecting employers' coverage to voluntary market insurers does not require the disclosure of records which are exempt pursuant to the `competitive advantage'" exemption." You specifically note in this regard that "the employer's producer of record under the Plan is the only producer who receives notice of a participating provider's interest in offering coverage."[2]
RESPONSE
It is my opinion based upon the information provided that the VCAP program does not run afoul of the FOIA's competitive advantage exemption, which applies in relevant part to "[f]iles that if disclosed, would give advantage to competitors or bidders. . . ." A.C.A.25-19-105(b)(9)(A) (Supp. 2007).[3]
As you have noted, the 1994 Attorney General Opinion involved a request for the names, addresses, and expiration dates of all the insureds in the Plan. It was concluded that the release of a "customer list" of this nature would "arm a competitor with valuable information concerning those customers." Op. Att'y Gen. 94-015 at 2. Accordingly, it was determined that the information was shielded by subsection 25-19-105(b)(9)(A), following federal precedent construing the federal FOIA's exemption for "commercial or financial information," 5 U.S.C. § 552(b)(4). Id.
As noted by two recognized commentators on the FOIA, the Arkansas Supreme Court has since said that "the exemption [under subsection 25-19-105(b)(9)(A)] may be invoked for the benefit of the person who has provided commercial or financial information if it can be shown that public disclosure is likely to cause substantial harm to his competitive position." Watkins and Peltz, THE ARKANSAS FREEDOM OF INFORMATION ACT (4th ed. m m Press 2004) at 160-61 and accompanying footnotes (citing Arkansas Dep't of Fin. Admin. v. Pharmacy Assocs., 333 Ark. 451,458,970 S.W.2d 217 (1998), and noting that "[p]rior to the Pharmacy Associates case, the Attorney General had followed the federal precedent on this point. E.g., Ark. Op. Att'y Gen. Nos. 97-071, 94-015, 93-254, 87-473.") The Arkansas Supreme Court has further observed that subsection 25-19-105(b)(9)(A) was "clearly intended to prevent competitors from obtaining information about others seeking the same type of work or furnishing material to the state." Arkansas Highway Transp. Dep't v. Hope Brick Works, Inc., 294 Ark. 490, 496,744 S.W.2d 711 (1988). With regard to the required showing of "substantial competitive harm," the above commentators have noted that:
. . . the Attorney General has long taken the position that conclusory or generalized allegations will not suffice. Rather, "specific factual or evidentiary material must be presented." [Quoting Op. Att'y Gen.97-071.] Moreover, the fact the submitter has labeled particular documents as "confidential" is not dispositive. According to the Attorney General, the custodian of the records must determine their status in light of the "unique characteristics" of each submitter, [citations omitted] and a per se determination that the exemption covers all records furnished by a business entity or all records of a particular type is impermissible.
Watkins and Peltz, THE ARKANSAS FREEDOM OF INFORMATION ACT, supra at 162 (footnotes omitted).
You have determined, presumably under this standard, that no competitive harm will result under the VCAP program as a consequence of matching insureds/employers with the underwriting criteria of workers' compensation insurers participating in the program. As the custodian of the records, you of course are the one who must make the factual determination as to whether release of any records would arm a competitor with valuable information such that substantial competitive injury would result to the one submitting the records. See, e.g., Op. Att'y Gen. 2005-238. I will nevertheless note that the information provided in your request for my opinion appears to support your conclusion. The VCAP program as described in your request does not require the disclosure of any records similar to those at issue in the 1994 Attorney General Opinion. There is no suggestion that records containing information analogous to a customer list would be disclosed as a consequence of the program. Nor have you presented any other facts indicating that substantial competitive injury might result from the release of any records that have been submitted pursuant to the program.
If there exist material facts outside those contained in your request, then corresponding modification of this opinion may be necessary. It is my opinion based upon the information provided, however, that you have correctly determined that the records to be provided pursuant to the VCAP program do not fall within the exemption under A.C.A. § 25-19-105(b)(9)(A).
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL, Attorney General
[1] The purpose of the Plan according to A.C.A. § 23-67-302 (Repl. 2001) is to "provide for the establishment of a mandatory workers' compensation insurance plan to assure coverage for employers who are in good faith entitled, but unable to procure, workers' compensation insurance in this state. . . ."
[2] It is my understanding that the "employer's producer of record" is the employer's insurance agent/broker.
[3] I am addressing your question under the assumption that the FOIA is implicated with respect to the VCAP program. I note in this regard that you have made no reference to any request for records pursuant to the FOIA, suggesting that the program as described in your correspondence involves the release of records, or information contained therein, on an on-going basis without the explicit invocation of that act. While one ordinarily might question the FOIA's applicability in the absence of an explicit request for records, I believe it may reasonably be concluded that the act applies in a case such as this involving a public agency's ongoing public disclosure of records that appear to fall within the definition of "public records," to wit: "writings . . . or data compilations in any medium, required by law to be kept or otherwise kept, and which constitute a record of the performance or lack of performance of official functions which are or should be carried out by a public official or employee. . . ." A.C.A. § 25-19-103(5)(A) (Supp. 2007). *Page 1